# Miller, Megee, & Company, Limited, Plffs. in Err., *v.* Joseph Dunlap et al.

A referee, under the act of May 14, 1874, must in his report state separately his finding of facts and his conclusions of law.

If he fails to do so, his report is fatally defective; and a judgment entered upon it will be reversed.

(Argued March 27, 1888.  Decided April 9, 1888.)

January Term, 1888, No. 220, E. D., before GORDON, Ch. J., GREEN, CLARK, and WILLIAMS, JJ.   Error to Common Pleas No. 4 of Philadelphia County to review a judgment for the defendants upon the report of a referee under the act of May 14, 1874, in an action of assumpsit, June Term, 1886, No. 247.  Reversed.

The report of the referee, John A. Ward, Esq., was as follows:

This is an action brought by Miller, Megee, & Company, Limited, against Dunlap & Clarke, to recover a balance of book account, amounting to $159.65, together with interest thereon from April 5, 1886.

The plaintiffs are manufacturers of blank books, and general book binders; the defendants are printers.

The book account, upon which the balance is claimed to be due, covers a period extending from August 8, 1883, to March 30, 1885; and the charges are for blank books and binding.

The plaintiffs make a specialty of what is known as a "Patent Flexible Back for Blank Books," etc.   The patent consists in having a number of leaves joined together by means of what are known as "patent sections" or "guards," instead of being bound in the usual way, and then binding a number of these "sections" or "guards" together in the flexible back book.

The plaintiffs, who were formerly known as "The Miller Bible and Publishing House, Limited," were anxious to have their book introduced into the various municipal departments; but

NOTE.—See also, to the same effect, Harris v. Hay, 111 Pa. 562, 4 Atl. 715; Lindsay v. Waymart Water Co. 4 Pa. Dist. R. 765, 1 Lack. Legal News, 327; Marr v. Marr, 103 Pa. 463; Graby Min. & Smelting Co. v. Laverty, 159 Pa. 287, 28 Atl. 207.

for a time were unsuccessful. Arrangements were made with various persons to accomplish this purpose, to no avail, until an agreement was made between the plaintiffs and the defendants.

In this arrangement, Mr. Francis H. Miller, one of the plaintiffs, acted for his firm, and Mr. Henry C. Dunlap, who is employed by the defendants, looked after their interests. A paper which was offered in evidence in this case (and marked "Exhibit No. 4, J. A. W., 6-22-87,") is in Mr. Francis H. Miller's handwriting, and reads as follows:

Net cost of paper.
do printing.
do ruling, binding, etc.
Guards at five cents each.

The foregoing to constitute total cost of blank books, and the amount received in excess of total cost to be divided equally between the Miller Bible and Publishing House, Limited, and the firm of Messrs. Dunlap & Clarke.

August 8, 1883.

The defendants made a specialty of city and county work, that is, of furnishing merchandise in their line to the various departments of the municipal government in this city. On this account they were chosen by the plaintiffs to aid in introducing the "Patent Flexible Back Book" into the various public departments, and an agreement made between plaintiffs and defendants, of which "Exhibit No. 4," which appears above, is the only written evidence. Upon the terms of the agreement made between the parties, on August 3, 1883, this case entirely depends; and the plaintiffs and defendants have entirely different views and opinions upon its interpretation.

The testimony shows that there was no actual written agreement, but the plaintiffs' only witness on this point testified that this memorandum (Exhibit No. 4) contains all the subject-matter of the verbal agreement, and that the defendants alone were to be liable for any losses that might occur under the arrangement. This is positively denied by the defendants' testimony. Daniel W. Clarke, one of the defendants, Henry C. Dunlap, and James W. Sayre, all affirm that the losses as well as the gains were to be apportioned between the parties. Mr. Sayre is the chief clerk in the office of the board of revision of taxes, and a

wholly disinterested witness.   His knowledge of the agreement was gleaned from conversations with Mr. Francis H. Miller and Mr. Henry C. Dunlap, when they called together at the board of revision of taxes, for the purpose of introducing the "Patent Flexible Back Book" in that office.

Mr. Sayre testifies that at the time these gentlemen called, the appropriation of the year was made and the question of the extra costs of these books over the old style was discussed and that Mr. Miller said he wanted to get his books into the departments, even if he had to suffer a trifling loss.

In the opinion of the Referee, "Exhibit No. 4" is not such a writing as would exclude verbal testimony in relation to the agreement between the parties; and, in fact, no such claim has been made by the plaintiffs.   This testimony is therefore wholly competent; and the weight of the evidence therefore points to the fact that the agreement between the plaintiffs and defendants was to divide the profits realized, and mutually bear the losses sustained in all contracts made with the different city departments to furnish these "Patent Back Books."

This also seems to be the reasonable and equitable view of this case.

The plaintiffs had an article they were anxious to introduce, and, after failing to do so, ultimately succeeded through the efforts of the defendants.   The two firms practically established a copartnership, so far as these particular contracts, mentioned in the testimony, are concerned.

It needs no authorities to demonstrate the fact that if two persons unite for the manufacture or sale of a certain commodity, and agree to divide the profits, they are equally responsible for the losses, even though the question of losses has never been mentioned between them.

The testimony of Mr. Weed, the bookkeeper for the defendants, shows that upon several of the contracts made under this agreement a loss amounting in the aggregate to $284.38 was incurred; half of which, $142.19, should be borne by the plaintiffs—and for which amount the defendants claim an off-set in this case.   The testimony of the bookkeepers of both the plaintiffs and defendants shows that a rebate of $29.52 was allowed the defendants by the plaintiffs.   Mr. Weed testifies that this rebate was made on account of a loss incurred on a contract; and he is corroborated by Mr. Henry C. Dunlap, while Mr. McCandless

testified that the rebate was made on account of an overcharge. Mr. Weed also testified that the said amount of $142.19 is exclusive of this item of $29.52; and the figures in the testimony, hereto annexed, show this to be the fact.

Mr. Francis H. Miller claims that the plaintiffs had nothing to do with the contracts made with the city, except to be paid for their books. This was, the referee does not doubt, his understanding, and he is sincere in his belief; but as a matter of equity, as well as law, and under all the evidence in the case, the claim of $142.19 is allowed.

Then there arises another question in the case, and that is the matter of overcharges for the "patent sections or guards" furnished the defendants by the plaintiffs, under their agreement.

In the testimony of Mr. Weed it will be found that overcharges to the amount of $81.57 had been made. The dates and amounts, as well as the articles for which the overcharges were made, are all set forth at length in his testimony, and a full explanation given.

The referee is convinced that the defendants' claim of a further set-off to this amount, to wit, $81.57, is just; and it is also allowed. These two sums aggregate $223.76, and are in excess of plaintiffs' claim in this case.

The defendants made a further claim for a share in the profits of certain contracts made by the plaintiffs. The referee declines to consider this matter, as the defendants have not asked for a certificate, and simply pleaded a set-off as a matter of defense to the plaintiffs' claim.

The referee, therefore, finds in favor of the defendants.

Exceptions to this report were filed and dismissed, and judgment was entered for the defendants.

The assignments of error specified the action of the referee: (1) In continuing the cause from June 27, 1887, to June 28, 1887, in order to permit the defendants to produce witnesses who were not present and had not been subpœnaed to attend; (2) in failing in his report to state separately and distinctly the facts found by him, and the conclusions of law; (3) in neglecting to file his report within sixty days after the termination of the trial before him; (4) in reporting as a conclusion of law that an agreement to divide profits implied an agreement to divide losses also; (5) in reporting that "upon the terms of the agreement of

August 3, 1883, the case entirely depends," when the plaintiffs' case rested and was established upon a theory entirely outside of this agreement, and which theory was not noticed by the referee in his report; and (6) in finding in favor of defendants, and in reporting judgment for defendants.

*Edwin O. Michener,* for plaintiffs in error.—There is in this report no proper statement, separately and distinctly, of the facts as found by the referee, and of the conclusions of law. This is required by the act of May 14, 1874 (P. L. 166). Marr v. Marr, 103 Pa. 463; Sweigard v. Wilson, 106 Pa. 207; Harris v. Hay, 111 Pa. 562, 4 Atl. 715.

The referee closed the case after hearing the arguments of counsel on June 28, 1887, as appears by his notes of testimony attached to his report. He did not file his report until September 24, 1887, a period of eighty-eight days after the case was concluded. This is a clear violation of the acts of May 14, 1874 (P. L. 166), and April 22, 1874 (P. L. 109). Marr v. Marr, 103 Pa. 467.

*James L. Miles* and *Harold Mann* for defendants in error.

Opinion by Mr. Justice Williams:

The act of May 14, 1874, provides that the duties of a referee in the trial and decision of a cause shall be the same as those of the court under a similar submission. The duties of the court, where trial by jury is waived and the questions of fact and law are submitted to the decision of the court, are regulated by the act of April 22, 1874. The provision is as follows:

"The decision of the court shall be in writing, stating separately and distinctly the facts found, the answers to any points submitted in writing by counsel, and the conclusions of law, and' shall be filed in the office of the prothonotary or clerk of the proper court where the case is pending, as early as practicable, not exceeding sixty days," etc. In this mode of trial the find-ings of fact stand in the place of a verdict, and will not be disturbed except for manifest error. The answers to the points and the conclusions of law stand in lieu of the judge's charge to the jury. The questions of fact and law are thus as clearly separated as in trials where the facts are decided by the jury. It is a mistake to blend the duties of the jury and the judge, because

they are invested in the same person by the terms of the submission. It is equally a mistake for a referee to submit an argument in support of his decision instead of the distinct and separate findings of fact and conclusions of law on which the decision rests. After a clear statement of the facts found and the legal conclusions reached, an argument in support of any one or more of these is quite in place; but the requirement of the statutes does not extend beyond the separate and distinct statement of the facts found and the rules of law applicable thereto. The report of the referee in this case is fatally defective in this respect, and the judgment entered thereon must for that reason be reversed.

Judgment reversed, report and award set aside, and *procedendo* awarded.